Hat, Judge,
delivered the opinion of the court:
The plaintiff is seeking to recover from the United States the sum of $237,500 which he claims is due him as broker’s commissions on the sale of certain wooden vessels owned by the United States, which sales he claims were made in June, 1919, and January, 1920. These vessels had been built by the United States under authority conferred upon the United States Shipping Board by the President of the United States, who had had the authority conferred upon him by the Congress of the United States.
The United States Shipping Board, after the armistice in November, 1918, decided to sell some of the wooden vessels then owned by the United States, and delegated to one Charles Piez, General Manager of the Emergency Fleet Corporation, who was also a member of the Shipping Board, the authority to formulate some plan to bring about the sale of these vessels. Piez undertook to delegate what authority he had to one Steven Bourne, the secretary of the Emergency Fleet Corporation, who had his office in the city of Philadelphia, and Bourne employed one DeGot with offices in New York to give out information with regard to the sale of these vessels. Before any sale was made it was determined by the Shipping Board that the authority for the sale of these vessels was vested in them alone, and the authority given to Piez was withdrawn.
While Piez was undertaking to formulate some plan for the sale of these vessels the plaintiff, Underwood, who had been an employee of the Shipping Board, and who had resigned his position with said board in June, 1918, bégan in December, 1918, to make inquiries of Piez, Bourne, and *388 DeGot as to the ships for sale, and representing himself as the agent of a steamship corporation, he also inquired of these various employees of the Shipping Board what payment would be made for services which might be rendered in the sale of these vessels. He made no such inquiries of the Shipping Board, but confined himself to these employees who had no authority to speak for the Shipping Board on this question. He was told by Piez that the question of compensation was one which would have to be determined by the Shipping Board. Bourne and DeGot informed him that while the Shipping Board had not decided what commission would be paid, yet that some compensation would be paid for services rendered in the sale of these vessels. It does not appear that either Bourne or DeGot had any authority to speak for or to bind the Shipping Board, or that at the time they made these representations the Shipping Board had taken any action upon the question.
Thereafter, in the name of the Oceanic Steamship Corporation, the plaintiff made an offer to the Shipping Board to buy certain ships, and at the same time had a contract with that corporation to pay him a commission of 2y2 per cent. The Shipping Board rejected this offer. Afterwards another corporation, the Nacirema Steamship Corporation, offered to purchase 15 wooden vessels from the Shipping-Board. This offer was made on March 1Y, 1919, by the plaintiff, who was accompanied by the president of the corporation. This offer was accepted and provided for the purchase of the vessels at the price of $650,000 per vessel. A contract was drawn and given to the plaintiff to present to the corporation for execution, and said, contract was duly executed on June 3, 1919. Under the provision of this contract $125,000 of the purchase price was to be paid on the delivery of each vessel, and a mortgage was to be executed by the purchaser to cover the balance of the purchase money. On five of the vessels so purchased the initial payment of $125,000 was made, but the mortgages provided for in the contract were never executed. On January 13, 1920, another contract was made between the Shipping Board and Nacirema Steamship Co. by which the sale price of the first *389 15 vessels was reduced to $553,571.43 each and said contract further provided for the sale by the Shipping Board to said company of 11 additional vessels for $3,500,000. The Nacirema company was financially unable to carry through either of said contracts, and the vessels were returned to the Shipping Board. In the negotiations leading up to the making of the last-mentioned contract it does not appear that the plaintiff took any active part.
On June 16, 1919, after the first contract was made the Shipping Board adopted the following resolution:
“Resolved, That hereafter the United States Shipping Board will allow a commission of V/i per cent to brokers selling for the account of this board any of the wooden steamers owned by it, providing that the said brokers produce satisfactory evidence to this board that they are the intermediary between the purchaser and the board, and that the purchase order be signed both by the broker and the purchaser.”
It is not shown that the plaintiff had any express contract with the Shipping Board as to the payment of commissions, nor with any person authorized to act for said board. The plaintiff relies upon an implied contract that he would be paid for his services in bringing about the sale of the vessels herein referred to. Apart from the fact that the sale was not in fact consummated the right of the Shipping Board to pay commission to brokers, or in other words, to employ some one outside to do the work which the law had imposed upon it, can not be sustained. Authority was vested in the Shipping Board to sell or dispose of these vessels; it was not within its power to delegate that authority to private persons to divest itself of the authority conferred upon it by law and to intrust its authority to some one not known to the law. The Shipping Board was a governmental agency, intrusted with certain powers which it could not delegate. The Government is not bound by any declaration or act of the Shipping Board unless it acted within the scope of its authority, and the plaintiff in dealing with it or any of its employees was bound to take notice *390 of the extent of the authority conferred by law upon the board, or upon any of its employees by the board.
In the present case the plaintiff had no dealings directly with the Shipping Board, nor did the Shipping Board by any of its actions lead the plaintiff to believe that he would be paid for any of the services which he alleges he rendered in bringing about the sale of these vessels. The plaintiff was in fact a volunteer, and a volunteer whose services were not known to nor recognized by the parties to whom it is alleged they were rendered. If he claims under the resolution passed by the board, then he must comply with the terms of the resolution, a portion of which was “ that the purchase order be signed both by the broker and the purchaser.” This was not done in this case, and no reason is given as to why it was not done.
The plaintiff had no contract with the Shipping Board; from the evidence it does not appear that he sought such a contract; as a matter of fact in all of his negotiations with the board he seems to have been representing the opposite party, and the board assumed, and had the right to assume, that the plaintiff was acting for the purchaser, and that he was not representing the Shipping Board.
From the evidence it appears that the United States Shipping Board had power and authority to sell the vessels in question; that the board never delegated that power or authority to any one else; that no employee of the board had any authority to commit the United States to the payment of a commission for bringing about a sale of any of these vessels; that the plaintiff represented the purchaser rather than the Shipping Board, and that he had no contract express or implied with any person or agency who was authorized to commit the Government to the payment of a commission for the sale of these vessels.
We are therefore of opinion that the petition of the plaintiff must be dismissed. It is so ordered.
Geaham, Judge; Booth, Judge; and Campbell, Chief Justice. concur. ■